UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY EDGERTON, *et al*,                          Case No. 18-12020

     Plaintiffs                                    Sean F. Cox
v.                                                United States District Judge

NATIONSTAR MORTGAGE, LLC,                         Stephanie Dawkins Davis
                                                  United States Magistrate Judge
     Defendant.
_____/

## REPORT AND RECOMMENDATION
## MOTION TO DISMISS (Dkt. 6)

## I.    PROCEDURAL HISTORY

Plaintiffs, Terry Edgerton, Charles Archibald, and Tracy Archibald filed a nine-count wrongful foreclosure complaint against defendant Nationstar Mortgage LLC on June 27, 2018. (Dkt. 1). In lieu of answering to the complaint, Nationstar filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs filed their response on August 27, 2018 and Nationstar filed its reply on September 10, 2018. (Dkt. 11).[1] District Judge Sean F. Cox referred this motion to the undersigned for report and recommendation. (Dkt. 7). The parties filed their joint statement of resolved and unresolved issues on October 25, 2018.

---

[1] According to the response, plaintiffs have conceded their claim under the Fair Debt Collection Practice Act. (Dkt. 9, pp 11-12).

(Dkt. 12).  The Court held a hearing, pursuant to notice, on November 8, 2018.

(Dkt. 10).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part.

## II.    FACTUAL BACKGROUND

In October of 2003, plaintiff Terry Edgerton obtained a mortgage loan (the

"Loan") from Quicken Loans, Inc. for the purchase of a single-family home for her

daughter and son-in-law, Tracy and Charles Archibald ("Mrs. Archibald" and "Mr.

Archibald," respectively; together, the "Archibalds").  (Dkt. 1, Pg. ID 4-5).  In

2013, Nationstar began servicing the Loan.  *Id*. at Pg ID 5.  Because the Archibalds

lived in the home and made payments on the Loan, Edgerton authorized the

Archibalds to speak on behalf of Edgerton regarding the Loan, and the Archibalds

did speak with Nationstar numerous times regarding the Loan.  *Id*. at Pg ID 5.  In

fall of 2016, plaintiffs engaged in discussions with Nationstar about paying off or

modifying the Loan, because the Archibalds were concerned that Mr. Archibald's

death could result in financial hardship for Mrs. Archibald at the then-current

periodic payment amount.  *Id*. at Pg ID 6.

During a telephone call with Nationstar in September of 2016, a Nationstar

employee instructed Ms. Archibald and Edgerton to stop making Loan, hazard

insurance, and property tax payments until March of 2017 so they would qualify

for a modification of the Loan.  *Id*. at Pg ID 6-7.  Whereas the existing monthly payment had been $1,037.76, Nationstar instructed plaintiffs to make increased "trial" payments of $1,459 starting in March of 2017.  *Id*. at Pg ID 7.  The Archibalds did so in March, April, and May of 2017.  *Id*.  Nationstar then locked plaintiffs out of the Loan account and did not accept payments.  *Id*.  When plaintiffs inquired of Nationstar about how to proceed, Nationstar instructed them to await forthcoming final modification documents.  *Id*.  But no such documents arrived.  *Id*.  During repeated phone calls in June, July, and August of 2017, Nationstar told plaintiffs not to worry about an apparently increasing delinquency on the Loan and assured them the final modification documents were forthcoming.  *Id*. at Pg ID 8.

Plaintiffs called again in September of 2017, intending to simply cancel the modification process so they could resume normal payments.  *Id*.  During that call, Nationstar stated for the first time that it had sent final modification paperwork to plaintiffs, accused plaintiffs of lying when they stated they had not received it, and threatened foreclosure.  *Id*.  Nationstar told plaintiffs they were required to pay approximately $18,000.00 to Nationstar by November 17, 2017 or Nationstar would foreclose and sell the home.  *Id*.  Mrs. Archibald called Nationstar on October 17, 2017 to request information on how to make the demanded payment.  *Id*. at Pg ID 9.  On Nationstar's instruction, Mrs. Archibald then called Nationstar's

foreclosure counsel to make the same request.  *Id*. Nationstar's counsel told Mrs. Archibald that the sheriff's sale was not scheduled for November 18, 2017 as Nationstar had communicated to Plaintiffs, but rather the very next day – October 18, 2017.  *Id*.  Nationstar's counsel then instructed Mrs. Archibald to wire payments to a specific Wells Fargo bank account to make the demanded payment. *Id*.

Plaintiffs mobilized on October 17, 2017 to request that friends and acquaintances wire funds to Nationstar's Wells Fargo account to prevent the foreclosure.  *Id*.  However, the attempted wire payments were rejected because plaintiffs had been provided the wrong account numbers.  *Id*.  Consequently, the sheriff's sale of the property proceeded as scheduled on October 18, 2017, and a third party purchased the sheriff's deed.  *Id*. at Pg ID 9-10.  Following multiple contacts by Mr. Archibald with Nationstar between October and December of 2017, Nationstar executed an "AFFIDAVIT TO SET ASIDE SHERIFF'S SALE" signed by a Nationstar representative and the third-party purchaser of the sheriff's deed.  *Id*. at Pg ID 10; Dkt. 1-1, Pg ID 25.  The affidavit purported to rescind the sheriff's sale and reinstate the original mortgage.  *Id*.  Nationstar asserted in the affidavit that it was the holder of the mortgage.  *Id*.  In subsequent correspondence, Nationstar admitted that the foreclosure had been initiated and completed in error. (Dkt. 1, Pg ID 10-11; Dkt. 1-2, Pg ID 28-29; Dkt. 1-3, Pg ID 31-32).

Nationstar subsequently communicated to plaintiffs that a new written loan modification proposal would be forthcoming; however, no such proposal has been sent to plaintiffs.  (Dkt. 1, Pg ID 11).  At the same time, despite Nationstar's affidavit, Lapeer County continues to recognize the third-party sheriff's deed holder as the owner of the property, and not plaintiffs.  *Id*.  This has prevented plaintiffs from selling the property to a willing purchaser and liquidating the substantial equity they have in the property.  *Id*.

Nationstar has continued to communicate confusing, contradictory, and inaccurate information to plaintiffs, including telling plaintiffs to ignore future collection letters even though such collection letters demand payments and threaten acceleration and foreclosure.  (Dkt. 1, Pg ID 12; Dkt. 1-4, Pg ID 34).  Nationstar also has not sent statements regarding the Loan each month from May of 2017 to present.  (Dkt. 1, Pg ID 12).

Finally, Edgerton's attempts to correct Nationstar's credit reporting have also been fruitless.  (Dkt. 1, Pg ID 13).  Her Experian credit report shows false and derogatory information about the Loan and its status.  *Id*.  When she disputed the information published by Nationstar to Experian, Nationstar: (1) wrongly "confirmed" the false information; and (2) added new false information about a foreclosure purportedly being initiated in May of 2018.  *Id*. at Pg ID 13-14.  The above-described events have damaged Edgerton's ability to obtain credit.  *Id*.

5

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

6

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, it is permissible to consider, in the context of a motion to dismiss, documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' complaint and are central to their claims. *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)); *Bundy v. Federal Nat. Mort. Ass'n.*, 2011 WL 977531, *2 (E.D. Mich. 2011) (Given that the

"the loan applications, mortgages, and notes attached to defendants' motion" were referred to in the complaint and were central to plaintiff's claims, they "are considered part of the pleadings, and the Court's consideration of these documents does not convert a motion to dismiss into one for summary judgment.").

B. <u>TILA - Count IV (Plaintiff Terry Edgerton)</u>

In Count IV, Terry Edgerton claims that Nationstar violated the Truth in Lending Act, (TILA), 15 U.S.C. § 1638(f), because Nationstar purportedly failed to provide periodic mortgage loan statements to her or her representatives since May 2017. (Dkt. 1, ¶¶ 109-110). An action under TILA can be brought only against creditors or their assignees. 15 U.S.C. §§ 1640-1641; *Mourad v. Homeward Residential, Inc*., 517 Fed. Appx. 360, 364 (6th Cir. 2013). TILA defines a creditor as someone who both regularly extends consumer credit and is initially due payment for debt arising from a consumer-credit transaction. 15 U.S.C. § 1602(g). This definition does not include loan servicers. *Mourad*, 517 Fed. Appx. at 364. Servicers are also excluded from the definition of assignees "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *Mourad*, 517 Fed. Appx. at 364 (affirmed dismissal of the plaintiff's TILA claim because it was undisputed that the defendant was merely the servicer, and not the owner, of the loan.).

According to Nationstar, because Ms. Edgerton admits that Nationstar is the servicer of the Loan, her TILA claim must fail. (Dkt. 1, ¶ 25). Ms. Edgerton further admits that the Loan was originated by Quicken Loans (not Nationstar). (Dkt. 1, ¶18). Nationstar also points out that the complaint recognizes that Federal National Mortgage Association owns the Loan, and does not allege that Nationstar is the current owner of the Loan. (Dkt. 1, ¶ 19). Therefore, Nationstar maintains that it is not (and cannot be) a creditor for purposes of a TILA claim and the claim should be dismissed as a matter of law. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) ("TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee."); *Mrla v. Fannie Mae*, 2016 U.S. Dist. LEXIS 94964 at *15-16 (E.D. Mich. July 21, 2016) ("Plaintiff's complaint does not allege that [Defendant] was anything more than a mere servicer. The Court, therefore, agrees with [Defendant] and dismissed the TILA claim against it.").

Nationstar also argues that Edgerton's TILA claim is time barred. TILA provides a one-year statute of limitations for claims seeking damages. 15 U.S.C. § 1640(e); *Williams v. GM Mortgage Corp.*, 2004 U.S. Dist. LEXIS 29365 (E.D. Mich. Aug. 18, 2004). The complaint alleges that Edgerton has not received loan statements since May 2017. (Dkt. 1, ¶ 110). Plaintiffs filed this action on June 27,

2018, thirteen months after the alleged violation.  *Id.* Accordingly, Nationstar

contends that the TILA is therefore barred and should be dismissed.

In response, Edgerton argues that it is clear from the complaint that

Nationstar is an assignee to which TILA's remedies section, 15 U.S.C. § 1641,

applies.  Edgerton maintains that the complaint does not allege that Nationstar acts

merely as servicer of the Loan for some other entity, and Exhibit 4 to the

Complaint makes explicit Nationstar's own claim that it owns the loan, which

it is now estopped to deny.  (Dkt. 1-4, Pg ID 34).  Indeed, as recently as May 4,

2018, Edgerton maintains that Nationstar held itself out to plaintiffs as not only the

servicer of the loan, but also its owner.  *Id.*  Edgerton points out that Federal

National Mortgage Association ("Fannie Mae"), which Nationstar claims is the

true owner of the loan, is nowhere mentioned in this default notice.  *Id.*  Further,

Nationstar also claimed to be the assignee of the mortgage in February of 2018.

(Dkt. 1-1, Pg ID 25).  As Edgerton points out, Nationstar does not contest that 15

U.S.C. § 1638(f) required it, as "[t]he creditor, assignee, or servicer with respect to

any residential mortgage loan," to send periodic loan statements her.  Nor does

Nationstar contest that it failed to do so each month from May of 2017 to present.

It only contests whether TILA provides a remedy for Nationstar's repeated

violations.  TILA does so explicitly where, as here, Nationstar is an assignee.

Section 1641 of TILA makes the remedies presented in Section 1640 -- which

generally apply to original creditors -- applicable to "assignees."  Edgerton

contends the complaint sufficiently alleges that Nationstar is not the original

creditor, but it is an assignee.  (Dkt. 1-1, Pg ID 25 ¶ 2, "Said Mortgage was later

assigned to Nationstar Mortgage LLC d/b/a Mr. Cooper;" Dkt. 1-4, Pg ID 34,

"Investor Name: Nationstar Mortgage LLC d/b/a Mr. Cooper.").  And, according

to the complaint, Nationstar failed to provide periodic statements regarding the

loan each month from May of 2017 to present.  Edgerton acknowledges that one or

two violations could be beyond TILA's one-year statute of limitations given the

filing of plaintiffs' complaint on June 27, 2018, but argues that nothing excuses

Nationstar's subsequent monthly violations thereafter.  *See Purnell v. Arrow Fin.*

*Servs., LLC*, 303 Fed. Appx. 297, 299, 301, 303 (6th Cir. 2009) (citing, inter alia,

*McCorriston v. L.W.T., Inc*., 536 F.Supp.2d 1268, 1272 (M.D. Fla. 2008); *Kaplan*

*v. Assetcare, Inc*., 88 F.Supp.2d 1355, 1360 (S.D. Fla. 2000); *Pittman v. J.J.*

*MacIntyre Co*., 969 F. Supp. 609, 611 (D. Nev. 1997)) (action based on

discrete act or omission that violates consumer protection statute within the

limitations period is not barred, even where it is the same type or regarding the

same debt as earlier act or omission).

     Addressing the latter issue first, Nationstar's point that some of Edgerton's

TILA claims are time-barred is well-taken, and essentially conceded by Edgerton.

However, Nationstar does not appear to claim that Edgerton's TILA claims

reaching back within one year of the filing date of the complaint are time-barred. And even if it were making the argument, plaintiff has cited persuasive authority supporting her position that each month's missed statement forms a discrete violation. Hence, only the omitted statements pre-dating the one-year window fall outside the limitations period. As such, the undersigned recommends that Edgerton's TILA claims be dismissed in part, only insofar as they accrued prior to June 27, 2017.

As to Nationstar's claim that the complaint merely alleges that it is a servicer and not an assignee, the undersigned is not persuaded. The complaint plainly alleges that Nationstar is both an assignee and a servicer. (Dkt. 1, p. 10 "Nationstar further asserted in the Affidavit that it is the holder of the mortgage executed by Ms. Edgerton and Mrs. Archibald, which Nationstar claimed to have received by assignment."; Dkt. 1-1, Pg ID 25 ¶ 2, "Said Mortgage was later assigned to Nationstar Mortgage LLC d/b/a Mr. Cooper;" Dkt. 1-4, Pg ID 34, "Investor Name: Nationstar Mortgage LLC d/b/a Mr. Cooper."). Nationstar does not argue that the complaint fails to state a TILA claim against it as an assignee, only that plaintiff failed to allege that it was an assignee. Having rejected this contention, the availability of a remedy under 15 U.S.C. § 1641 appears to be established and not meaningfully challenged. Thus, the motion to dismiss the TILA claim, to the extent it is not time-barred, should be denied.

C.    ECOA - Count VI (Plaintiff Edgerton)

Nationstar argues that Edgerton failed to state a prima facie case for an

Equal Credit Opportunity Act (ECOA) discrimination claim.  15 U.S.C.A.

§ 1691(d).  To establish a *prima facie* discrimination case under the ECOA, a

plaintiff must establish that: (1) she is a member of a protected class; (2) she was

an applicant for credit; (3) she qualified for credit; and (4) despite her

qualifications, the creditor denied her request.  *Mays v. Buckeye Rural Elec. Co-op,*

*Inc.*, 277 F.3d 873, 877 (6th Cir. 2002).  Specifically, Nationstar argues that

Edgerton fails to allege that she is a member of a protected class, that she qualified

for "credit," and that despite her qualifications, Nationstar denied the request.

According to Nationstar, Edgerton cannot allege an ECOA claim as the May 2018

Loan Modification Agreement was mailed to Edgerton.  (Dkt. 6-5, Ex. D).[2]

In response, Edgerton makes clear that she is not asserting a discrimination

claim.  Rather, she alleges violation of the duty imposed by the ECOA to timely

notify her, as an applicant for credit, of the results of her application, along with a

statement of reasons for any adverse action with respect to that application.  15

U.S.C. § 1691(d).  The undersigned agrees with Edgerton that there is no basis for

_____

[2] Nationstar does not explain how the Court can consider this document in conjunction
with its motion to dismiss as it was not mentioned or relied on in plaintiff's complaint.  Thus, the
Court would have to treat Nationstar's motion as one brought under Rule 56 to consider this
document.  The Court cannot do so without notice to the opposing party.

asserting that a person must be a member of a "protected class" to bring a cause of action under Section 1691e for violation of Section 1691(d); rather, a person need only be an "aggrieved applicant" to state a claim.  15 U.S.C. § 1691e(a).  The "ECOA's notice provisions apply to all loan applicants, not only those who claim to have been denied credit due to discrimination." *Moore v. Wells Fargo Bank, N.A.*, 2011 WL 652844 (E.D. Tenn. Feb. 14, 2011) (quoting *Williams v. MBNA America Bank, N.A.*, 538 F.Supp.2d 1015, 1019 (E.D. Mich. 2008) (citing *Jochum v. Pico Credit Corp. of Westbank*, 730 F.2d 1041, 1043 n. 3 (5th Cir. 1984) (finding that the plaintiffs did not need to state a claim of discrimination to assert a cognizable claim under § 1691(d)); *see also Polis v. Am. Liberty Fin., Inc.*, 237 F.Supp.2d 681, 688 (S.D. W.Va. 2002) (Plaintiffs do not need to allege membership in protected class to state a claim under § 1691(d)(1) because that section requires notice of adverse actions to all consumers, not just those belonging to protected class); *Rayburn v. Car Credit Ctr. Corp.*, 2000 WL 1508238, at *3 (N.D. Ill. Oct.10, 2000) ("Section 1691(d) sets forth a notification requirement separate and apart from the statute's discrimination provisions.").  As Nationstar suggests, the Sixth Circuit held in *Thompson v. Bank of America N.A.*, 773 F.3d 741, 754-55 (6th Cir, 2014), a mere refusal to modify repayment terms is not an adverse action.  Here, however, Edgerton more specifically alleges not just a refusal to modify, but a failure to provide a statement of reasons in writing as to

why it rejected Edgerton's application for credit, as required by § 1691(d)(2).

(Dkt. 1, ¶ 122).  While Nationstar claims that it provided such a notice, the Court

cannot consider this document in the context of a Rule 12(b)(6) motion because

that notice is not part of the pleadings.  Thus, Edgerton's complaint states a claim

under § 1691(d)(2) of ECOA.[3]

### D.    FCRA - Count VII (Plaintiff Edgerton)

It is clear from Edgerton's complaint that her Fair Credit Reporting Act

(FCRA) claim falls under § 1681s-2(b) and thus, this is the only claim that the

court will address.[4]  Nationstar argues that plaintiff fails to state a claim under

§ 1681s-2(b).  Under 15 U.S.C. § 1681s-2(b), a furnisher's liability arises only

after it fails to conduct a reasonable investigation after receiving notice from a

credit reporting agency.  *Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857,

864 (E.D. Mich. 2009).  Nationstar maintains that Edgerton's complaint is devoid

of any allegation that Nationstar failed to conduct a reasonable investigation into

the dispute it purportedly received from Experian; therefore, Edgerton's FCRA

claim should be dismissed as a matter of law.  *Bailey v. Equifax Info. Servs., LLC*,

---

[3] Unlike *Botsford v. Bank of Am., N.A.*, 2014 WL 4897529, at *11 (E.D. Mich. Sept. 30, 2014), a case relied on by Nationstar, the complaint here specifically alleges that Nationstar failed to provide such a notice.  Edgerton did not wait until filing her response brief to raise such a claim, as was the case in *Botsford.*

[4] Nationstar argues that plaintiff fails to state a claim under § 1681s-2(a), but the complaint and Edgerton's response make it clear that she is not asserting any such claim.

2013 WL 3305710 (E.D. Mich. July 1, 2013) (dismissed Plaintiff's FCRA claim

under Section 1681s as "Plaintiff has failed to make factual allegations that support

her claims that FIA reported inaccurate or misleading information or had

unreasonable procedures.").

In response, Edgerton argues that Nationstar looks past the following

specific allegations in her complaint: (1) Ms. Edgerton discovered derogatory and

false information concerning the status of the Nationstar account in an Experian

report in May of 2018 (Dkt. 1, Pg ID 13); (2) she disputed the false information

with Experian (*id*.); (3) Experian transmitted the dispute information to Nationstar

(*id*.); (4) in response, Nationstar "updated" the information not to correct the false

information, but to maintain it and add additional false and derogatory information

(*id*.); (5) Nationstar failed and/or refused to correct its credit reporting errors in

response to Edgerton's dispute submitted to Experian (*id*. at Pg ID 14).  According

to Edgerton, these allegations are more than sufficient to show violation of 15

U.S.C. § 1681s-2(b) and liability under FCRA, 15 U.S.C. §§ 1681n, 1681o.

Viewing the allegations in the light most favorable to plaintiff, the undersigned

agrees that Edgerton has stated a claim.  Plaintiff is not silent as to Nationstar's

actions upon receiving notice from Experian concerning her dispute.  Though

plaintiff does not directly discuss what, if any investigation occurred, her

allegations are sufficient to raise a reasonable inference that Nationstar failed to

conduct a reasonable investigation.  Such an inference is supported by plaintiff's

allegations that Nationstar's response to the information from Experian was simply

to update the information, maintaining the inaccurate information and adding false

information.  A fair reading of plaintiff's allegations is that in lieu of or instead of

conducting an investigation into the accuracy of information provided, Nationstar

provided a nominal update that basically consisted of piling on more inaccurate

information.  *Moore v. Capital One Serv., LLC*, 2013 WL 1136725, at *3 (W.D.

Mich. Feb. 26, 2013) (report and recommendation adopted in 2013 WL 1129608)

("to state a claim, plaintiff must allege that he complained to a credit reporting

agency, that the credit reporting agency notified defendant of the dispute, and that

the defendant failed to conduct a reasonable investigation or other specific duty

established by the FCRA").  Thus, Nationstar's motion to dismiss plaintiff's FCRA

claim should be denied.

> E.   RESPA/Regulation X - Count VIII (Plaintiff Edgerton)

In Count VIII, Edgerton claims that Nationstar violated RESPA by initiating

one or more foreclosure proceedings in connection with the Loan at times when the

Loan was not more than 120 days delinquent, relying on 12 C.F.R. § 1024.41(f)(1).

(Dkt. 1, ¶¶ 132-133).  Under § 1024.41(f), a "servicer shall not make the first

notice or filing required by applicable law for any judicial or non-judicial

foreclosure process unless: (i) A borrower's mortgage loan obligation is more than

120 days delinquent…."  According to Nationstar, Edgerton fails to allege that Nationstar made "the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" before the Loan was more than 120 days delinquent.  Nationstar complains that Edgerton fails to even allege what first notice she is relying on, the date of the notice, or the date of the default. Rather, Edgerton alleges that she and plaintiff Tracy Archibald contacted Nationstar in September 2016, and they were purportedly told to stop making payments until March 2017.  (Dkt. 1, ¶ 37).  Plaintiffs then claim that they relied on Nationstar's alleged instructions and made trial payments in March, April, May 2017.  (Dkt. 1, ¶ 40).  Thus, Nationstar maintains that Edgerton admittedly did not make any payments from September 2016 through February 2017, far more than the 120 days delinquency required.  Based on the foregoing, Nationstar maintains that there can be no violation under 12 C.F.R. § 1024.41(f)(1).  Nationstar also argues that plaintiff's RESPA claim, to the extent it is based on an oral promise, is barred by the Michigan Statute of Frauds.

In response, Edgerton maintains that the following allegations are sufficient to state a RESPA claim: Edgerton alleged that Nationstar initiated foreclosure on her property when her loan was not more than 120 days delinquent, in violation of RESPA and Regulation X. (Dkt. 1, Pg ID 21); she alleged that she learned on October 17, 2017 that a sheriff's sale was scheduled for the following day. (*id*. at

Pg ID 9); she alleged that Nationstar told her during a September 2017 telephone call that a foreclosure sale would take place in November of 2017 if a specified payment was not made, permitting the inference that Nationstar made the "first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" in September of 2017 or earlier. (*id.* at Pg ID 8); and Edgerton alleged that no default occurred before Nationstar's initiation of foreclosure proceedings. *Id.* According to Edgerton, nothing more need be alleged to state a claim under 12 U.S.C. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41. Edgerton says while Nationstar may dispute when a default took place or when the "first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" took place, that is a factual dispute and not one that may be decided on a motion under Rule 12(b)(6). Central to Nationstar's argument that the Loan somehow must have been more than 120 days delinquent as of September of 2017 or earlier are the assumptions that: (1) no matter what the cause, Nationstar's failure to receive or apply payments to a loan account is sufficient to create a delinquency and default under the loan; and (2) Edgerton's payments of the increased "trial" payments in the amount of $1,459 in March, April, and May of 2017 were insufficient to keep the loan in good standing for less than 120 days prior to September of 2017. Edgerton maintains that these are factual assumptions that contradict the allegations in the complaint and cannot be resolved on a motion

to dismiss.  Further, on the record before this Court; i.e., the Complaint and attachments thereto, Edgerton argues that it is not possible to determine that the Loan was more than 120 days delinquent when Nationstar initiated foreclosure and thus, Nationstar's motion should be denied.

RESPA, Regulation X provides a list of requirements that the loan servicer must comply with when a borrower submits a loss mitigation application.  *Knott v. Ocwen Loan Servicing, LLC*, 2018 WL 3997825, *3 (E.D. Mich. 2018).  Under § 1024.41, a loan servicer may not foreclose on a property in certain circumstances if a borrower submitted a completed loan modification, or a loss mitigation application.  *Id*.  If a servicer receives a loss mitigation or loan modification application forty-five days or more before a foreclosure sale, the servicer must determine if the application is complete and notify the borrower whether the application is complete or incomplete.  *Id*. (citing 12 C.F.R. § 1024.41(2)(i)(A)).  If the application is incomplete, the servicer shall notify the borrower as to what additional documentation and information must be provided for completion of the application.  *Id*. (12 C.F.R. § 1024.41(2)(i)(B)).  The servicer must provide the borrower a reasonable date by which the borrower is required to submit the necessary documentation.  *Id*. (12 C.F.R. § 1024.41(2)(ii)).  Servicers are not required to evaluate incomplete applications.  *Id*. (citing 12 C.F.R. § 1024.41).  If a borrower submits a complete loss mitigation or loan modification application

thirty-seven days before a scheduled foreclosure sale, the servicer cannot begin

foreclosure proceedings unless the "borrower's mortgage loan obligation is more

than 120 days delinquent." *Id*. (citing 12 C.F.R. § 1024.41(f)(1)(i); *Lambert v.*

*PNC Bank, N.A.*, 2017 WL 4251784, at *3 (E.D. Mich. Sept. 26, 2017)).

      The RESPA claim is deficient.  The undersigned is not persuaded that

Nationstar's argument relies on factual assumptions that cannot be considered in

ruling on a 12(b)(6) motion.  Rather, plaintiffs' complaint fails to come forward

with the basic factual assertions required to support a RESPA claim.  Most

importantly, there are no allegations in the complaint suggesting that plaintiffs

submitted a completed loan modification or loss mitigation application *before* the

foreclosure was initiated.  The complaint contains allegations relating to this

process *after* the admittedly wrongful foreclosure took place.  Indeed, it is clear

from the complaint that plaintiffs did not complete such an application before the

foreclosure took place because they allege that they never received the application

as Nationstar never sent the application package.  (Dkt. 1, ¶¶ 43-48).  *See e.g.*,

*Wiggins v. Ocwen Loan Servicing, LLC*, 2017 WL 476384 (E.D. Mich. Feb. 6,

2017) (Complaint failed to state a RESPA claim under § 1024.41(f)(2) because it

did not plausibly state that the plaintiff filed a "complete loss mitigation

application.").  Under these circumstances, the date of the foreclosure and the

length of the delinquency are of diminished pertinence.  Fundamentally, to assert a

violation § 1024.41, a plaintiff must have submitted a loan modification or loss

mitigation application *before* the foreclosure proceedings have been initiated *or* no

later than 37 days before the foreclosure sale is to take place. *Pearson v.*

*Specialized Loan Servicing, LLC*, 2017 WL 3167648, *5 (E.D. Tenn. July 24,

2017). While plaintiffs here allege that Nationstar thwarted their efforts to do so,

they have provided no authority suggesting that even if Nationstar did take actions

to prevent them from filing their application, that they are entitled to proceed under

this particular RESPA provision, in absence of a completed application. For these

reasons, the undersigned suggests that plaintiffs have failed to state a claim under

RESPA and this claim should be dismissed.

     F.     <u>State Law Claims (Counts I, II, V, and IX)</u>

     1.     IIED - Count I (All Plaintiffs)

In Michigan, the elements for a claim of intentional infliction of emotional

distress ("IIED") are "(1) extreme and outrageous conduct; (2) intent or

recklessness; (3) causation; and (4) severe emotional distress." *Atkinson v. Farley*,

171 Mich. App. 784, 788 (1988). The conduct must be so extreme and outrageous

"as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community." *Ross v. Burns*, 612 F.2d 271,

273 (6th Cir. 1980). According to Nationstar, plaintiffs' complaint fails to allege

"extreme and outrageous" conduct that would give rise to a claim for intentional

infliction of emotional distress.  Because plaintiffs' claims are based entirely on the Sheriff's Sale, which is provided for in the Mortgage, their claim is based on the Mortgage.  The Mortgage defines Edgerton and Ms. Archibald's contractual relationship with Nationstar, including the right to foreclose, and such basis is insufficient to state an emotional distress claim.  *See Mowett v. JPMorgan Chase Bank*, 2016 WL 1259091, at *5 (E.D. Mich. Mar. 31, 2016), modified on reconsideration sub nom. *Mowett v. JPMorgan Chase Bank, N.A*, 2016 WL 4475014 (E.D. Mich. Aug. 25, 2016), and appeal dismissed sub nom. *Mowett v. JPMorgan Chase Bank, N.A.*, 2017 WL 4708000 (6th Cir. July 6, 2017) (E.D. Mich. March 31, 2016) ("Since [Plaintiff's] infliction of emotional distress claim is based on his contractual relationship with [Defendant], his infliction of emotional distress will be dismissed for failure to state a claim."); *Springs v. United States Dep't of Treasury*, 567 Fed. Appx. 438, 449 (6th Cir. 2014) ("[T]he initiation and acceleration of lawful foreclosure proceedings is not the type of conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'").  Thus, Nationstar says that Count I should be dismissed as a matter of law.

In response, plaintiffs contend that Nationstar misstates the law in asserting that foreclosure-related misconduct cannot give rise to a claim of intentional

infliction of emotional distress.  Michigan law is clear that it can, and courts

applying Michigan law have denied motions to dismiss such claims.  That result is

appropriate here, where plaintiffs have clearly alleged a pattern of repeated and

abusive foreclosure threats and false representations in furtherance of Nationstar's

unlawful foreclosure efforts.  (Dkt. 1, ¶¶ 38-63, Pg ID 7-10).  Plaintiffs

acknowledge that actions taken to foreclose on a mortgage "generally" do not rise

to the level of extreme and outrageous conduct.  *Reed v. BAC Home Loans

Servicing LP*, 2012 WL 1570340, *2 (W.D. Mich. May 4, 2012) (citing *Robbins v.

Mortg. Elec. Registration Sys., Inc*., 2009 WL 3757443, *8 (W.D. Mich. Nov. 9,

2009)).  However, plaintiffs contend that the general rule does not apply where the

conduct alleged is particularly severe.  In *Reed*, for example, the court denied a

servicer's motion to dismiss intentional infliction of emotional distress claims

where the homeowner had alleged a pattern of repeated misleading, confusing

communications by the servicer that included communications regarding loan

modification options and the status of foreclosure proceedings.  *Id*. at *3.  The

court reasoned:

> The allegations regarding repeatedly holding out and then
> dashing hope, demanding the same documents again and
> again, misapplying mortgage payments, misrepresenting
> that BANA would contact the Reeds to prevent
> foreclosure, promising not to foreclose, repeatedly
> requesting the same information from the Reeds, etc.,
> could be found to be extreme and outrageous conduct.
> After all, a couple's house is usually the family's most

> prized and valuable possession. One's identity often is
> tied up in the place where one lives.

*Id*.

Plaintiffs maintain that their situation is remarkably like that presented in *Reed*, including the endless string of confusing communications and representations, culminating in a foreclosure that never should have taken place, and followed by even more misleading and confusing communications after Nationstar discovered its errors.  (Dkt. 1, ¶¶ 38-78, Pg ID 7-13).  Plaintiffs also dispute the correctness and applicability of *Mowett v. JPMorgan Chase Bank*, which they maintain incorrectly treated the "general" rule as a bright-line test and ignored both the most appropriate, published state-court authority in *Margita v. Diamond Mortg. Corp*., 159 Mich. App. 181, 187-88 (1987), and the well-reasoned decision in *Reed*.

In the view of the undersigned, plaintiff's allegations here fall within the *Reed* and *Margita* line of cases, rather than those case based on *Ursery v. Option One Mortg. Corp*., 2007 WL 2192657, at *16 (Mich. App. July 31, 2007).  In *Ursery*, the court rejected the plaintiff's IIED claim because the essence of the claim was that the defendant breached the mortgage contract with him in various ways and foreclosed on the property.  The Michigan Court of Appeals found this insufficient to state an IIED claim.  *Id*.  Thus, many federal district court cases, relying on *Ursery*, have similarly concluded that where a plaintiff merely claims a

breach of a mortgage contract or that a defendant took legal actions to foreclose, no

IIED will lie.  *See e.g.*, *Robbins v. Mortg. Elec. Registration Sys., Inc*., 2009 WL

3757443, at *8 (W.D. Mich. Nov. 9, 2009); *Davis v. JP Morgan Chase Bank, N.A*.,

2015 WL 7770861, at *5 (E.D. Mich. Dec. 3, 2015) (Rejecting IIED claim where

the plaintiff's claims were based on the defendant's foreclosure and attempts to

evict the plaintiff, "which the state courts have confirmed [the defendant] had a

right to pursue.").

Here, the facts outlined by plaintiffs are more like those in *Reed* and

*Margita*.  Indeed, the complaint is replete with allegations of deliberately

misleading and outrageous conduct by Nationstar, over a period of many months,

including: (1) refusing to take payments which caused plaintiffs' delinquency; (2)

repeatedly failing to send modification paperwork; (3) falsely claiming that

modification paperwork was sent to plaintiffs; (4) accusing plaintiffs of lying about

not receiving the modification paperwork; (5) threatening foreclosure when they

lacked the legal right to foreclose; (6) locking plaintiffs out of their account so they

could not make payments; (7) telling plaintiffs the payoff amount to prevent

foreclosure and giving a payment deadline of November 27, 2017, then changing

the deadline one day before the new deadline was given; (8) giving plaintiffs'

incorrect account information to make their payment, which lead to a the payment

not being timely made; (9) all of which lead to an admittedly wrongful foreclosure,

which was ultimately reversed, but is apparently still causing title problems (that

Nationstar refused to address) thereby preventing plaintiffs from selling their

property.  (Dkt. 1, pp. 5-12).  Based on the foregoing facts, which the Court must

accept as true for purposes of this motion, plaintiffs have stated a claim for IIED

under Michigan law.

2.    MRCPA - Count II (All Plaintiffs)

Nationstar argues that plaintiffs failed to allege a claim under the Michigan

Regulation of Collection Practices Act (MRCPA).  The MRCPA prohibits

misrepresentations and misleading communications by a "regulated person" in

connection with the collection of a debt or a claim.  Mich. Comp. Laws § 445.252.

The MRCPA creates a limited private right of action, permitting recovery of actual

damages or to obtain civil fines in the event of a "willful violation."  Mich. Comp.

Laws § 445.257.  Nationstar argues that while plaintiffs cite to Mich. Comp. Laws

§ 445.452(e) and (f) in their Complaint (¶¶ 96-97), they make only mere

conclusory statements that Nationstar purportedly violated the MRCPA, failing to

specify which section of the MRCPA Nationstar allegedly violated, and that this is

simply insufficient to state a claim.  Nationstar also contends that plaintiffs do not

plead any facts identifying on what "communication to collect a debt" they are

relying and how such communications were a willful violation of the MRCPA.

*See Dorr v. Wells Fargo Bank*, *N.A.*, 2014 WL 1328200 (E.D. Mich. Mar. 28,

2014) (holding that Plaintiff pleaded no facts to show correspondence was deceptive and thus claim must be dismissed); *Willis v. U.S. Bank*, 2013 WL 593971 (W.D. Mich. Feb. 14, 2013).

To the extent plaintiffs are relying on loan modification discussions with Nationstar to support their MRCPA claim, Nationstar argues that such reliance is misplaced because communications regarding loan modification requests do not fall within the scope of the MRCPA, as they are not related to the collection of a debt. *See Huff v. CitiMortgage, Inc.*, 2015 WL 457742 (E.D. Mich. Feb. 3, 2015) (held that statements during plaintiff's inquiry confirming the possibility of a loan modification does amount to a communication to collect a debt). Similarly, communications about foreclosure do not fall under the scope of the MRCPA. *Bolone v. Wells Fargo Home Mortg., Inc*., 858 F.Supp.2d 825, 837-38 (E.D. Mich. 2012); *Frost v. Wells Fargo Bank, N.A*., 901 F.Supp.2d 999, 1012 (W.D. Mich. 2012).

Finally, Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," is applicable to all allegations of fraud, including allegations of fraud under the MRCPA. *See Griffin v. JPMorgan Chase Bank, N.A*., 2013 WL 6587870 (E.D. Mich. Dec. 16, 2013), aff'd, 595 Fed. Appx. 473 (6th Cir. 2014). According to Nationstar, plaintiffs' complaint merely alleges that "Nationstar

violated the MRCPA," and to the extent plaintiffs are relying on purported

misrepresentations under Mich. Comp. Laws § 445.252(f), their claim still fails as

a matter of law for failure to plead with the requisite particularity.  (Dkt. 1, ¶ 99).

Indeed, plaintiffs do not provide the time or contents of the alleged

misrepresentations, nor do plaintiffs provide specifics regarding who made the

purported misrepresentation.  Beyond the recitation of general behavior the

MRCPA prohibits, Nationstar argues that Count II is insufficiently pleaded with

the requisite particularity and must be dismissed.  *See Burniac v. Wells Fargo*

*Bank, N.A*., 2015 WL 401018 (E.D. Mich. Jan. 28, 2015), aff'd, 810 F.3d 429 (6th

Cir. 2016) (dismissed Plaintiff's claim for violation of the MRCPA for failure to

satisfy Fed. R. Civ. P. 9).  Lastly, besides mere conclusory statements that

Nationstar's purported violations of the MRCPA "proximately caused" injury,

harm, and loss (Dkt. 1 ¶ 101), Nationstar maintains that plaintiffs do not plead any

facts supporting the existence of any actual damages, which precludes any

recovery under the MRCPA, and requires the dismissal of the claim.  *See* Mich.

Comp. Laws § 445.257(1); *Carr v. JP Morgan Chase Bank, NA,* 2013 WL

5450291 (E.D. Mich. Sept. 30, 2013) (Dismissed plaintiffs' MRCPA claim,

explaining that "[a] review of the Complaint fails to allege that Plaintiffs suffered

actual damages.  Plaintiffs also fail to allege what any facts to show that any

communications or acts by the Bank were willful violations of the [MRCPA]").

As a mortgage loan servicer, Nationwide is a "regulated person" under the

MRCPA. *Knight v. Ocwen Loan Servicing*, LLC, 301 F. Supp. 3d 723, 725 (E.D.

Mich. 2018).  Plaintiffs' complaint asserts Nationstar violated the MRCPA by

mispresenting "in a communication with a debtor the legal status of an action being

taken or threatened, the legal rights of the creditor or debtor, or that the

nonpayment of a debt will result in the attachment or sale of the debtor's

property."  (Dkt. 1, Count II, p. 15, citing Mich. Comp. Laws § 445.252(f)).  While

plaintiffs' Count II does not recount the specific facts relating to this violation

within the Count, plaintiffs' complaint contains sufficient facts, which are

incorporated by reference into Count II, that state a claim under this provision.  As

plaintiffs recount in the response, they alleged the following facts:

> • Nationstar instructed Plaintiffs during a September
> 2016 telephone call to stop making loan, tax, and
> insurance payments and to make "trial" modification
> payments of $1,459 beginning March of 2017.  (Dkt. 1,
> Pg ID6-7).
>
> • Nationstar treated the loan as delinquent immediately
> thereafter.  *Id*. at Pg ID 7.
>
> • In monthly telephone calls in June, July, and August of
> 2017, Nationstar representatives told Plaintiffs not to
> worry about an apparently increasing delinquency on the
> loan and the fact that Nationstar was not accepting
> payments. *Id*. at Pg ID 8.
>
> • Nationstar threatened foreclosure during a September
> 2017 telephone call and demanded payment of
> $18,000.00 by November 17, 2017 to avoid foreclosure,

even though Nationstar lacked the right to foreclose at
that time.  *Id*.

• Nationstar lied in its September 2017 telephone call,
because on October 17, 2017, Nationstar told Plaintiffs
conflicting information during another telephone call:
that a sheriff's sale was set for October 18, 2017 and
Plaintiffs would need to pay $18,000.00 that day to avoid
foreclosure.  *Id*. at Pg ID 9.

• Nationstar's foreclosure counsel and agent then
proceeded to mislead Plaintiffs during an additional
telephone call on October 17, 2017 regarding the account
into which the demanded payment needed to be made,
preventing Plaintiffs from making the unlawfully
demanded payment.  *Id*.

• Nationstar conducted a sheriff's sale of the property on
October 18, 2017.  *Id*.

• Nationstar subsequently admitted the sheriff's sale had
been erroneous.  *Id*. at Pg ID 10-11; Dkt. 1-2, Pg ID 28;
Dkt. 1-3, Pg ID 31.

• In telephone calls with Plaintiffs between April 16,
2018 and June 27, 2018, Nationstar instructed Plaintiffs
to ignore written collection correspondence.  (Dkt. 1, Pg
ID 12).

• On May 4, 2018, after having verbally instructed
Plaintiffs to ignore such letters, Nationstar issued a letter
to Plaintiffs inaccurately stating the total amount due and
the past due date and threatening acceleration and
foreclosure.  *Id*.; Dkt. 1-4, Pg ID 34-35.

Plaintiffs correctly point out that each of these factual allegations is incorporated

by reference within Count II of the Complaint, which details the sections of the

MRCPA at issue.  (Dkt. 1, Pg ID 15).  Nationstar's attempt to have the Court view

Count II without reference to the factual allegations in the complaint is not well-taken. Moreover, the communications identified are not, as Nationstar suggests merely communications regarding an attempt to modify the mortgage terms, without any suggestion of an attempt to collect a debt. Rather, plaintiffs' complaint details Nationstar's purported efforts to collect past due amounts on the mortgage.

Further, the foregoing allegations satisfy Rule 9(b), to the extent that is necessary. In *Griffin*, *supra*, the complaint contained one paragraph that generically identified "multiple violations" that would be "further fleshed out through discovery," including "endless collection calls," reporting false and derogatory information to credit reporting agencies, and making false statements of standing to foreclose. *Id*. at *5. Unlike the complaint in *Griffin*, the complaint here contains detailed allegations regarding the content and timing of the verbal communications at issue, identifies the written communications at issue, and identifies the specific actions taken by Nationstar.

3.   MBLSLA - Count V (All Plaintiffs)

In Count V, plaintiffs' Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (MBLSLA) claim is based on allegations that "Nationstar's failure to provide Plaintiffs with material disclosures of information required by TILA and RESPA and to correct credit reporting errors under FCRA were intentional or due

to gross or wanton negligence." (Dkt. 1 ¶116). Nationstar first argues that there is

no private right of action under this statute, citing several cases from the Michigan

federal district courts. *Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034,

1040 (E.D. Mich. 2013) ("As an initial matter, this claim must fail because the

MBLSLA does not provide a private right of action.") (citing *Shaya v.

Countrywide Home Loans, Inc.*, 2011 U.S. Dist. LEXIS 29388, at *12 (E.D. Mich.

Mar. 22, 2011) (citing Mich. Comp. Laws § 445.1663)); *Hood v. Chase Manhattan

Mortg. Corp.*, 2013 U.S. Dist. LEXIS 54476, at *15 (E.D. Mich. April 16, 2013).

Plaintiffs correctly observe that these cases uniformly fail to cite to the section of

the statute providing such a right, Mich. Comp. Laws § 445.1681. *See Yaldu v.

Bank of Am. Corp.*, 700 F.Supp.2d 832, 846 (E.D. Mich. 2010) ("The act provides

an individual cause of action to '(a) [o]btain a declaratory judgment that a method,

act, or practice is a violation of this act[;] (b) [o]btain an injunction against a

person who is engaging in or is about to engage in a method, act, or practice that

violates this act [;] … [r]ecover actual damages resulting from a violation of this

act, or $250.00, whichever is greater, together with reasonable attorney fees and

the costs of bringing the action.'") (quoting Mich. Comp. Laws § 445.1681(1)); *see

also Griffor v. BSI Financial Services Ventures Trust*, 2017 WL 1196368 (E.D.

Mich. 2017) (The court concluded that the the plaintiffs had a private right to a

cause of action under MBLSLA) (citing *Yaldu*). Given the plain language of

§ 445.1681 and the failure of the *Shaya* line of cases to address this provision, the undersigned concludes that there is a private right of action under MBLSLA.

Nationstar also argues that the MBLSLA is preempted by the FCRA, but this argument is woefully undeveloped. While Nationstar directs the court's attention to its argument that plaintiffs' defamation claim is preempted by the FCRA, there is no development of any argument regarding why the MBLSLA is likewise preempted. And, there is certainly no case law cited to support this conclusion. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

Nationstar asserts that even if there is a private right of action, plaintiffs have failed to set forth any facts that would support their claim. Rather, while plaintiffs reference Mich. Comp. Laws § 445.1672(b) and (c), they do not allege whether these are the sections plaintiffs are relying on. (Dkt. 1, ¶ 115) ("Nationstar has violated the MBLSLA with respect to each Plaintiff."). To the extent Plaintiffs are relying on §§ 445.1672(b) and (c), Nationstar says they fail to sufficiently allege any facts to support their claim. For example, Plaintiffs fail to allege what "material disclosures of information required by TILA and RESPA" were not

34

provided and fail to allege any facts supporting their mere conclusory statements that the failure to provide this information was "intentional or due to gross or wanton negligence." (Dkt. 1, ¶ 116).

In response, plaintiffs assert that their MBLSLA claim is premised in part on Nationstar's failure to provide disclosures—i.e., periodic statements—required by 15 U.S.C. § 1638(f), as well as Nationstar's material misrepresentations to plaintiffs in connection with the servicing of their loan. According to plaintiffs, under like circumstances, this Court has held that an MBLSLA claim is not subject to dismissal. *Noel v. Fleet Fin., Inc.*, 971 F. Supp. 1102, 1113 (E.D. Mich. 1997) ("Under the clear language of the [MBLSLA], if the Plaintiffs have successfully alleged that the [Defendants] failed to conduct their business in accordance with the law, then they have also successfully alleged a violation of the [MBLSLA]."). As recounted above, plaintiffs' complaint contains detailed facts supporting their claims that disclosures required by state or federal law were not provided to plaintiffs and that Nationstar made material misrepresentations in connection with a mortgage transaction. *See* Mich. Comp. Laws. § 446.1672. Thus, plaintiffs have stated a claim under the MBLSLA. Nationstar has not provided any convincing argument suggesting otherwise.

> 4.    Defamation - Count IX (Plaintiff Edgerton)

Nationstar argues that Edgerton's defamation claim (Count IX) should be

dismissed because such claim is subject to and preempted by 15 U.S.C.

§ 1681t(b)(1)(F).  According to Nationstar, the claim is subject to § 1681t(b)(1)(F)

because Edgerton asserts that Nationstar's alleged defamatory conduct arose from

Nationstar's alleged inaccurate reporting of credit information to a consumer

reporting agency.  (Dkt. 1, ¶ 138; *see Daniel v. W. Asset Mgmt.*, 2011 U.S. Dist.

LEXIS 124788, at *25 E.D. Mich. Oct. 28, 2011) (holding that defamation claims

based on allegedly defamatory information submitted to credit reporting agencies

falls within the ambit of 1681t(b)(1)(F)).  A defamation claim that "appears to fit

squarely within section 1681s-2" because "it stems directly from the allegedly

inaccurate credit reporting by the Defendant" is preempted by § 1681t(b)(1)(F)).

*Barkho v. Homecomings Fin. LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009).

Plaintiffs maintain that the court in *Daniel* misconstrued 15 U.S.C.

§ 1681h(e) in holding it inapplicable to a defamation claim against a furnisher for

willful publication of false information.  That subsections contains a list of

independent types of action that are preempted "except as to false information

furnished with malice or willful intent to injure": (1) "defamation, invasion of

privacy, or negligence with respect to the reporting of information to a consumer

reporting agency;" (2) "defamation, invasion of privacy, or negligence … based on

information disclosed pursuant to section 1681g, 1681h, or 1681m of this title;" or

(3) "defamation, invasion of privacy, or negligence … based on information

disclosed by a user of a consumer report or for a consumer against whom the user

has taken adverse action." *Id*. According to Edgerton, the court in *Daniel*

mistakenly failed to recognize the existence of the first type of claim—one that is

explicitly not preempted by the FCRA to the extent the furnishing of false

information was malicious or willfully injurious.

Further, plaintiff contends that the general preemption provision of the

FCRA, 15 U.S.C. § 1681t, was intended to preempt only statutory causes of action,

not state common law. *Carlson v. Trans Union LLC*, 259 F. Supp. 2d 517, 520-22

(N.D. Tex. 2003); *Nelski v. Ameritech*, 2004 WL 1460001, *3-6 (Mich. App. June

29, 2004) (citing *Carlson*, 259 F. Supp. at 521; *Jeffrey v. Trans Union, LLC*, 273 F.

Supp. 2d 725, 727 (E.D. Va. 2003)). While Section 1681h refers specifically to

common-law causes of action and clearly preempts certain non-willful defamation

claims, § 1681t refers to a "requirement or prohibition under the laws of any

State." The Supreme Court has held similar language to preempt only state

statutory enactments, not common law claims. *Sprietsma v. Mercury Marine*, 537

U.S. 51, 63 (2002) (construing 46 U.S.C. § 4306 and holding that the term "law or

regulation" in an express preemption clause referred only to positive state

enactments, and not to state common law tort claims). Edgerton argues that this

reading of § 1681t is the only reading that harmonizes with, rather than nullifying

or amending, § 1681h. Edgerton maintains that she adequately alleged that

Nationstar's furnishing of false, damaging information to Experian regarding the

purported delinquency on the loan and foreclosure of the mortgage was willful and

malicious, and thus, her defamation claim is not preempted under the FCRA.

The parties correctly note that the Sixth Circuit has not spoken on the

apparent conflict in the FCRA between the two preemption provisions.  As

explained in *Skidmore v. Access Grp., Inc.*, 2015 WL 6736533, at *4-5 (E.D. Mich.

Nov. 4, 2015), the FCRA contains two provisions which address the relationship

between the statute and any state law claims the consumer might also assert in a

private cause of action: 15 U.S.C. §§ 1681h(e) and 1681t(B)(1)(F).  Section

1681h(e) reads:

> Except as provided in sections 1681n and 1681o of this
> title, no consumer may bring any action or proceeding in
> the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information
> against any consumer reporting agency, any user of
> information, or any person who furnishes information to
> a consumer reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of
> this title, or based on information disclosed by a user of a
> consumer report to or for a consumer against whom the
> user has taken adverse action, based in whole or in part
> on the report except as to false information furnished
> with malice or willful intent to injure such consumer.

*5 15 U.S.C. § 1681h(e) (footnote omitted).  This provision was included when the

FCRA was enacted in 1970.  *Id.*; *see also Purcell v. Bank of Am.*, 659 F.3d 622,

625 (7th Cir. 2011).  The second preemption provision, added in 1996 when

Congress also added § 1681s-2, reads:

> No requirement or prohibition may be imposed under the
> laws of any State with respect to any subject matter
> regulated under section 1681s-2 of this title, relating to
> the responsibilities of persons who furnish information to
> consumer reporting agencies, except that this paragraph
> shall not apply (i) with respect to section 54A(a) of
> chapter 93 of the Massachusetts Annotated Laws (as in
> effect on September 30, 1996); or (ii) with respect to
> section 1785.25(a) of the California Civil Code (as in
> effect on September 30, 1996).

15 U.S.C. § 1681t(b)(1)(F).

The *Skidmore* court described the conflict among various district courts

regarding the scope of the preemptive effect of these two provisions and the lack of

circuit authority on resolving the conflict.  *Id*. at *5 (citing *Wolfe v. MBNA Am.

Bank*, 485 F. Supp. 2d 874, 883-86 (W.D. Tenn. 2007) (summarizing the

approaches); *Himmelstein v. Comcast of the District, LLC*, 931 F. Supp. 2d 48, 57-

59 (D.D.C. 2013) (recognizing three approaches)).  The three approaches are

commonly referred to as (1) the "temporal approach," (2) the "statutory approach,"

and (3) the "total approach."  *Id*.  A fourth approach was adopted by a magistrate

judge in the District Court for the Middle District of Tennessee in *Westbrooks v.

Fifth Third Bank*, 2005 WL 3240614 (M.D. Tenn. Nov. 30, 2005).  *Skidmore*

further observed, however, that both the Seventh Circuit and the Second Circuit

have addressed the issue since the development of the four approaches and found

no conflict:

> Unlike these judges [who have adopted the approaches
> described above], we do not perceive any inconsistency
> between the two statutes. Section 1681h(e) preempts
> some state claims that could arise out of reports to credit
> agencies; § 1681t(b)(1)(F) preempts more of these
> claims. Section 1681h(e) does not create a right to
> recover for willfully false reports; it just says that a
> particular paragraph does not preempt claims of that
> stripe. Section 1681h(e) was enacted in 1970. Twenty-six
> years later, in 1996, Congress added § 1681t(b)(1)(F) to
> the United States Code. The same legislation also added
> § 1681s-2. The extra federal remedy in § 1681s-2 was
> accompanied by extra preemption in § 1681t(b)(1)(F), in
> order to implement the new plan under which reporting
> to credit agencies would be supervised by state and
> federal administrative agencies rather than judges.
> Reading the earlier statute, § 1681h(e), to defeat the later
> enacted system in § 1681s-2 and § 1681t(b)(1)(F), would
> contradict fundamental norms of statutory interpretation.

*Skidmore*, at *6 (quoting *Purcell*, 659 F.3d at 625). "The Seventh Circuit therefore

held that the plaintiff's state law claims for defamation, invasion of privacy, and

negligence in reporting information to CRAs -- which related to the furnisher's

obligations under § 1681s-2 -- were preempted regardless of whether willfulness or

malice is alleged." *Skidmore*, at *6 (citing *Purcell*, 659 F.3d at 626). In

*Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 46, 48 (2d. Cir. 2011),

the Second Circuit agreed with the *Purcell* court's reasoning and also concluded

that the FCRA preempted the plaintiff's defamation and intentional infliction of

emotional distress claims related to the furnishing of false information to a CRA.
*Skidmore*, at \*6.  Just as in *Skidmore*, the undersigned finds the reasoning set forth
in *Purcell* and *Macpherson* persuasive.  To the extent that Edgerton's defamation
claim is premised on conduct regulated by § 1681s-2, it is preempted by the FCRA
pursuant to § 1681t(b)(1)(F).  *See Skidmore*, at \*6.  Moreover, even to the extent
that Edgerton's defamation claim alleges malice and willful intent to injure,
because such a state law claim "relate[s] to a subject matter regulated under
§ 1681s-2, [it is] preempted by § 1681t(b)(1)(F)."  *Id*. at \*7.  Based on the
foregoing, the undersigned suggests that Edgerton's defamation claim be dismissed
because it is preempted by the FCRA.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part as
follows:

1.      Plaintiffs' **TILA** claim should be **DISMISSED** to the extent it is
based on any claim that accrued more than one year before the complaint in this
case was filed, but the remainder of defendant's motion to dismiss the **TILA** claim
should be **DENIED**;

2.      Defendant's motion to dismiss plaintiffs' **ECOA** claim should be
**DENIED**;

41

3.      Defendant's motion to dismiss plaintiffs' **FCRA** claims should be

**DENIED**;

4.      Defendant's motion to dismiss plaintiffs' **FDCPA** claim should be

**GRANTED** based on plaintiffs' agreement to dismissal of this claim;

5.      Defendant's motion to dismiss plaintiffs' **RESPA** claim should be

**GRANTED**;

6.      Defendant's motion to dismiss plaintiffs' **IIED** claim should be

**DENIED**;

7.      Defendant's motion to dismiss plaintiffs' **MRCPA** claim should be

**DENIED**;

8.      Defendant's motion to dismiss plaintiffs' **MBLSLA** claim should be

**DENIED**; and

9.      Defendant's motion to dismiss plaintiffs' **defamation** claims should

be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 31, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>December 31, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov